IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RICHARD C. MORRIS,            )
                              )
        Plaintiff,            )
                              )
    v.                        )    1:07CV562
                              )
MICHAEL J. ASTRUE,            )
Commissioner of Social Security, )
                              )
        Defendant.            )

**MEMORANDUM OPINION AND RECOMMENDATION
OF MAGISTRATE JUDGE ELIASON**

Plaintiff Richard C. Morris seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying his applications for disability insurance and supplemental security income ("SSI") benefits. The Commissioner's denial decision became final on May 25, 2007, when the Appeals Council concluded there was no basis to review the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

Plaintiff filed applications for disability insurance and SSI benefits on October 24, 2003, alleging disability as of June 27, 2003, due to arthritis in his back and hips. A hearing was held before ALJ Kevin F. Foley on May 2, 2006 in Charlotte, North Carolina. A decision denying Plaintiff's claim was issued on May 24, 2006. Plaintiff filed a request for review, and on May 25, 2007, the Appeals Council found no basis on which to review the

ALJ's decision. Plaintiff then filed a request for judicial review in this Court on July 24, 2007.

## Scope of Review

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. The Court may not make credibility determinations or substitute its judgment for that of the ALJ's. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

In reaching a decision on Plaintiff's claim, the ALJ followed a five-step analysis set out in the Commissioner's regulations. 20 C.F.R. §§ 404.1520, 416.920(2007). Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial

gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. Id.

In this case, the ALJ found that Plaintiff met the disability insured status requirements of the Social Security Act on his alleged onset date of disability and remained insured through the date of the decision, May 24, 2006. (Tr. at 14.) At the first step of the sequential evaluation, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability. (Id. at 15.)

The second step in the sequential evaluation process is to determine whether Plaintiff has a severe impairment. A severe impairment is one which, either separately or in combination with another impairment, significantly limits the claimant's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c) (2007). At step two, the ALJ found that Plaintiff had severe impairments including degenerative disc disease and osteoarthritis. (Tr. at 16.) At step three of the sequential evaluation, the ALJ found that Plaintiff did not have an

-3-

impairment, or combination of impairments, that met or equaled a listing in Appendix 1, Subpart P, Regulation Number 4. (Id.)

The ALJ concluded his evaluation of Plaintiff's residual functional capacity at steps four and five by noting that although Plaintiff no longer retained the residual functional capacity to perform his past relevant work as a construction laborer, truck driver or road roller operator, he was able to perform light work with a sit/stand option and no more than occasional bending, stooping or twisting, and no working around unprotected heights or dangerous machinery. (Id. at 21.) Based on Plaintiff's age, education, and work experience, as well as an exertional capacity for a limited range of light work, in conjunction with the credible testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform consistent with his impairments. (Id. at 22.) The ALJ, therefore, found that Plaintiff is "not disabled" as defined in the Social Security Act. (Id.)

In this action, Plaintiff's first argument is that the ALJ erred in not giving controlling weight to the opinion of Plaintiff's treating physician, Dr. Cecil Farrington. (Docket No. 13, Br. in Supp. of Pl.'s Mot. for Summ. J., at 2-9.) In a medical questionnaire completed in July 2004, Dr. Farrington opined that Plaintiff can sit or stand for only thirty minutes at a time and for a total of less than two hours in a work day, would need to shift positions at will, and take a fifteen minute break every

hour.  (Tr. at 83-84.)  He further opined that Plaintiff is capable of lifting and carrying less than ten pounds, had significant limitations in doing repetitive reaching, handling and fingering, and would likely miss work more than four times a week.  (Id. at 85-86.)

In support of his argument, Plaintiff contends that the ALJ's analysis that Dr. Farrington's opinion was not supported by objective medical evidence, is "inadequate and does not provide sufficient reason to reject" Dr. Farrington's opinion.  (Id. at 11.)  Plaintiff argues that the ALJ applied an incorrect legal standard in discounting Dr. Farrington's opinion, and that Dr. Farrington's opinion cannot properly be rejected on the basis that it is unsupported by objective medical evidence and based solely on Plaintiff's subjective complaints.  (Docket No. 13, Pl.'s Br., at 8; Docket No. 19, Br. in Supp. of Resp. to Def.'s Mot. for J. on the Pleadings, at 1-4.)  Plaintiff's argument is without merit.

Although the opinions of treating physicians may be given controlling weight in making a determination of disability, they will not be given such weight if not supported by medically acceptable clinical and laboratory techniques or if they are not consistent with other substantial evidence in the record. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).  A physician's opinion may be discounted based on a number of factors, such as a relatively short treatment time, lack of independent evaluation, or undue reliance simply on Plaintiff's statements in forming the

-5-

opinion.  Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438 (4th Cir. 1997).  Little weight may be accorded an opinion based mainly on Plaintiff's subjective complaints.  Johnson, 434 F.3d at 657; Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

Here, substantial evidence supports the ALJ's finding that Dr. Farrington's opinion is unsupported by objective medical evidence and inconsistent with his own treatment notes and other substantial evidence in the record.  The limitations on Plaintiff's abilities expressed by Dr. Farrington appear not to be based on any objective clinical evaluations, but instead on Plaintiff's subjective complaints.  As the ALJ discussed, Plaintiff, after an absence of many years, returned to Dr. Farrington in April 2004, nearly a year after Plaintiff's alleged onset date of disability.  (Tr. at 15.) His main complaint was of hypertension and Dr. Farrington recorded no complaints of back pain by Plaintiff.  (Id. at 153.)  He did report, however, that Plaintiff had normal motor and sensory function, and good strength and range of motion in his extremities. (Id.)  The following month, Plaintiff returned to Dr. Farrington to follow up for hypertension, and for the first time complained of chronic lower back pain.  (Id. at 155.)  However, Dr. Farrington noted that an x-ray showed only mild degenerative changes, and he again found normal reflexes, range of motion, and strength.  (Id.) On July 6, 2004, Plaintiff returned to Dr. Farrington for a follow up for hypertension and with the main complaint of an allergic reaction.  (Id. at 157.)  Plaintiff complained of constant low back

-6-

pain, but again Dr. Farrington reported that Plaintiff's reflexes were normal and he had good strength and range of motion. (Id.) However, his notes again reflect no objective findings concerning Plaintiff's back pain. (Id.)

Also on July 6, 2004, Dr. Farrington completed a lumbar spine residual functional capacity questionnaire. Despite the apparent lack of clinical evidence, Dr. Farrington reported that Plaintiff suffered from degenerative disc disease and osteoarthritis, and imposed the limitations described above. (Id. at 81-86.) In support of these very restrictive limitations, Dr. Farrington reported Plaintiff suffered from decreased range of motion in his neck, a positive straight leg test, a shuffling gate, diminished reflexes, mild muscle spasms, and impaired sleep. (Id. at 81-82.) Yet, none of these symptoms and findings appear in his clinical notes, and indeed, in the case of diminished reflexes, are apparently contradicted by the clinical notes. (See, e.g., id. at 153, 155, 157.)

The ALJ also noted the inconsistencies between Dr. Farrington's opinions and that of Dr. Kola Adekanmbi, a consulting physician who examined Plaintiff in 2003 and 2005,[1] and who found

---

[1] Dr. Adekanmbi examined Plaintiff twice, and submitted two reports, one in 2003 and one in 2005. (Tr. at 109-12, 145-49.) Dr. Adekanmbi notes, submitted under the name Adebola Adekanmbi were also part of the record. (Id. at 102-08.) Although the notes are substantially identical to the 2003 report, the ALJ apparently mistakenly understood the notes to be from an examination by a different consulting physician. (See id. at 15.) However, the ALJ's mistake does not change the nature or weight of his decision, or the Court's conclusion that it was not in error.

-7-

no objective evidence to substantiate any spinal impairment. (Tr. at 15.) In 2003, Dr. Adekanmbi reported that Plaintiff's gait and strength were normal, he was able to sit, stand, squat, tandem walk, and move around without difficulty. (Id. at 111.) He noted that Plaintiff had no swelling, erythema or point tenderness in his lumbar spine, that there was no muscle atrophy, and that Plaintiff was able to raise his arms over his shoulders with no difficulty. (Id.) An x-ray taken in connection with this examination showed normal alignment of the lumbar spine, and only mild to moderate osteoarthritis of the right hip and mild degenerative disc disease. (Id. at 106.) In 2005, Dr. Adekanmbi again reported that Plaintiff's gait and strength were normal, he was able to walk, move and squat without much difficulty, there was no swelling or erythema of, or any point of tenderness along, the cervical and lumbar spine, and straight leg test was negative. (Id. at 147-48.)

The ALJ contrasted Dr. Farrington's reliance on Plaintiff's subjective complaints and his ignoring the objective finding with Dr. Adekanmbi's more objective review and deemed Dr. Adekanmbi's opinions to be more reliable. There is no rule that a non-examining physician's opinion is entitled to less weight than a treating physician's opinion. In all events, both opinions must be consistent with medical findings and other evidence in the record. Grizzle v. Pickands Mather and Company/Chisolm Mines, 994 F.2d 1093 (4th Cir. 1993). Thus, a non-treating physician's opinion may be accorded significant weight where, as here, it is based on the

-8-

medical records and is supported by objective medical evidence. Johnson, 434 F.3d at 657. Therefore, the ALJ's finding was both reasonable and within the ALJ's province.

Finally, Plaintiff faults the ALJ for allegedly ignoring the fact that Plaintiff did, somewhat more, consistently seek medical treatment after 2004. However, the ALJ did consider this. He found,

> [t]hus, from June 2003 through May 2004, a period of almost one year, although the claimant has alleged an inability to work throughout that period, and beyond, on account of disabling pain, he not only failed to maintain any regular course of treatment, but also did not, except on one incidental occasion, seek treatment for pain of such severity as to be disabling from an [sic] hospital emergency room or other urgent care facility. It is unpersuasive that the claimant would simply endure, for almost a year, pain of such severity without seeking treatment. In reaching this conclusion I have considered that the claimant testified that he could not afford medical care. However, I am not persuaded by that testimony. In the first place, there is no indication that the claimant sought treatment from free or reduced cost facilities that may exist in his area. That is not to say that such facilities exist, but it would be expected that an individual in need of medical attention, but with limited financial resources, would explore such alternatives. Moreover, the claimant sought treatment at a hospital emergency room for an abscess on his buttocks, indicating that treatment was available to him despite his financial circumstances. Also, in that regard, although the claimant incidentally mentioned that he had pain, he was not treated for his alleged disabling pain, which is a persuasive indicator that his alleged pain was not at a level consistent with disability. Such a level of pain would surely be immediately apparent to the skilled and professional doctors and support staff at the hospital and it would be reasonable to assume that they would have treated such pain. Yet, apparently, they did not treat the claimant for pain, but confined his treatment to his abscess. Additionally, the evidence indicates that the claimant smokes a pack of cigarettes a day, which is an expensive habit. Despite his assertion that he experienced disabling pain, the

-9-

claimant apparently chose to spend his limited funds on
tobacco rather than on medical care, which is persuasive
that his pain could not have been as severe as he has
asserted.

Also, even after the claimant re-established regular care
with Dr. Farrington, there is no indication that he
sought additional care for chronic pain. There is no
indication that he experienced even one exacerbation
requiring hospital or other urgent care, there is no
indication that he was referred to an orthopedist, a
neurosurgeon or a pain management specialist for more
specialized care, there is no indication that he was
advised to undergo epidural steroid injections or
implantation of a spinal cord stimulator, there is no
indication that he was prescribed a TENS unit, and there
is no indication that he was advised to consider surgery.
In regard to surgery, I have considered that Dr.
Farrington opined that the claimant's condition was "not
surgically amenable". [sic] However, Dr. Farrington did
not explain how he arrived at that conclusion, nor did he
explain precisely what he meant by "not surgically
amenable". [sic] Perhaps he meant that the claimant's
condition was not severe enough to warrant surgery, which
would imply that his condition was not severe enough to
be considered disabling. Alternatively, perhaps he meant
that the claimant's condition was not one that could be
corrected by surgery. However, Dr. Farrington is not a
specialist, and in the absence of a concurring opinion
from an orthopedist or a neurosurgeon, I am unwilling to
assign much weight to that possible alternate meaning of
"not surgically amenable". [sic] In any event, the fact
that the claimant's pain was apparently adequately
managed with only short term narcotics such as Lortab
provide by a primary care physician is inconsistent with
a finding that the claimant's pain was so debilitating as
to render him unable to perform any substantial gainful
activity whatsoever.

(Tr. at 18.) These are all acceptable reasons for discounting Dr.

Farrington's opinion and Plaintiff's subjective complaints of pain

upon which Dr. Farrington apparently relied.

Plaintiff next argues that the ALJ erred in posing a

hypothetical question to the vocational expert that was not based

on the evidence of record. (Docket No. 13, Pl.'s Br., at 9.) As

-10-

an initial matter, the Court notes that Plaintiff phrases his argument so as to challenge the ALJ's findings at step five of the sequential analysis, presumably because at step five, the burden of persuasion shifts to the Commissioner. However, a plain reading of Plaintiff's brief reveals that Plaintiff's entire argument rests on the issue of whether the ALJ's finding at step four of the sequential evaluation concerning Plaintiff's residual functional capacity is supported by substantial evidence. The thrust of the argument does not really pertain to whether the ALJ failed to adequately describe Plaintiff's limitations in his hypothetical question to the VE, but instead, Plaintiff's actual objection is to the ALJ's finding concerning Plaintiff's residual functional capacity and whether it is supported by substantial evidence.

The ALJ found that Plaintiff is capable of performing light work with a sit/stand option, postural limitations, and the need to avoid unprotected heights and dangerous machinery. (Tr. at 21.) The ALJ's finding is supported by substantial evidence and, therefore, is not in error. The ALJ relied on the objective medical evidence, including x-rays of Plaintiff's spine which show only mild to moderate changes, and the findings of consulting physician Dr. Adekanmbi, who, as noted above, found no objective evidence to substantiate any spinal impairment.

The finding is also consistent with Dr. Farrington's treatment records, which reveal no significant physical limitations. (See id. at 159-73.) As the ALJ noted, there is no record that

-11-

Plaintiff was referred to or sought treatment for his chronic pain from a pain management or other specialist,[2] no evidence that Plaintiff was prescribed treatment beyond short-term narcotics, and no evidence of exacerbation requiring hospital or other urgent care.[3]  (Id. at 18.)

The ALJ also considered the opinions of the non-examining state agency physicians, who opined that Plaintiff is capable of performing medium-level work.  (Id. at 20, 87-94, 101.)  The ALJ evaluated and weighed these opinions, and determined that Plaintiff's "severe" degenerative disc disease and arthritis, as well as his use of narcotic medications, allow him to perform only a limited range of light work.  (Id.)

The Court also finds that the ALJ adequately accounted for Plaintiff's allegations of pain to the extent they were supported by the record evidence.  The ALJ may consider the presence or lack of objective evidence of pain, inconsistencies in the evidence, and statements by plaintiff and physicians, in short, all relevant evidence in making an evaluation of the credibility of plaintiff's

---

[2] Plaintiff contends that he was referred to an investigational drug study for patients with arthritis.  (Docket No. 13 at 6.)  The record shows that Plaintiff consented to participate in such a study, but there is no evidence that Plaintiff participated in or completed the study.  (See Tr. at 131-42.)  Plaintiff claims he had an adverse reaction to the medication, but treatment records appear to indicate that Plaintiff had a reaction to a medication prescribed by Dr. Farrington, rather than to any investigational medication.  (See id. at 155, 157)(prescribing Wygesic and noting emergency room visit due to allergic reaction to Wygesic.)

[3] Plaintiff argues that he twice sought emergency room treatment, but in 2003 he sought treatment for a hip abscess and in 2004, for an allergic reaction to medication.  (See id.)

-12-

Case 1:07-cv-00562-JAB-RAE   Document 20   Filed 11/25/08   Page 12 of 15

subjective complaints of pain.  Craig, 76 F.3d at 595-96. Subjective allegations of severe pain may be discounted when not supported by objective medical evidence and/or supporting medical opinions are made without any testing.  Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005).  The failure to seek help also constitutes a reason for discounting subjective claims.  Id.

Plaintiff also argues that because he was unable to afford medical treatment, it was improper for the ALJ to discredit his testimony on the grounds that he did not seek medical treatment. (Docket No. 13, Pl.'s Br., at 6.)  However, the ALJ based his credibility determination, in part, on the fact that Plaintiff did not seek medical treatment until well after Plaintiff's alleged onset date of disability.  (Tr. at 17.)  The ALJ acknowledged that Plaintiff claimed he could not afford treatment, but properly discounted Plaintiff's testimony because there is no record that Plaintiff sought treatment from free or reduced cost facilities.[4] (Id. at 18.)  The Court recognizes that a "claimant may not be penalized for failing to seek treatment she cannot afford;  '[i]t flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him.'"  Lovejoy v. Heckler, 790

---

[4] The ALJ also noted evidence that Plaintiff was able to obtain treatment for other medical complaints and afford a pack a day smoking habit. (Tr. at 18.)

F.2d 1114, 1117 (4th Cir. 1986)(quoting Gordon v. Schweiker, 725 F.2d 231, 237 (4th Cir. 1984)). However,

> [w]hile a claimant's failure to obtain medical treatment that she cannot afford cannot justify an inference that her condition was not as serious as she alleges, an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility.

Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994)(Luttig, J., concurring)(citations omitted). Therefore, it was not improper for the ALJ to consider Plaintiff's failure to seek and obtain low-cost or free treatment in determining what weight to accord his allegations of pain. Id.

Finally, Plaintiff argues that the ALJ erred in failing to apply Medical-Vocational Rule 202.11, which, Plaintiff argues, would dictate a finding of "disabled" as of Plaintiff's fiftieth birthday. (Docket No. 13, Pl.'s Br., at 10.) However, by its terms, this Rule applies only to claimants with a residual functional capacity for sedentary work. Plaintiff says the ALJ was required to accept all of Dr. Farrington's limitations. However, the Court has already determined that the ALJ's finding that Plaintiff is able to perform light work is supported by substantial evidence. Thus, the ALJ properly declined to apply this inapplicable Rule.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (docket no. 12) be denied, that Defendant's motion

-14-

for judgment on the pleadings (docket no. 16) be granted, and judgment be entered dismissing this action.

/s/ Russell A. Eliason
**United States Magistrate Judge**

November 25, 2008